**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
|    Frank J. Peta, Jr., | : | |
|        Debtor. | : | Bankruptcy No. 19-13264-MDC |

# MEMORANDUM

## I.  INTRODUCTION

Before the Court are two matters (together, the "Contested Matters") for resolution in the bankruptcy case of Frank J. Peta, Jr. (the "Debtor"): (i) the motion of Tompkins VIST Bank f/k/a Allegiance Bank of North America (the "Bank," and together with the Debtor, the "Parties") for relief from the automatic stay (the "Stay Relief Motion")[1] to move forward with foreclosure proceedings with respect to the Debtor's home (the "Property"); and (ii) the Debtor's objection (the "Claim Objection")[2] to the Bank's proof of claim in the instant bankruptcy case.  The Parties have briefed the issues with respect to the Contested Matters, and the Court held a hearing (the "Hearing") on February 24, 2020.  For the reasons stated herein, the Court will (i) overrule in part and sustain in part the Claim Objection, and (ii) deny in part and hold in abeyance in part the Stay Relief Motion.

## II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Debtor's Prior Bankruptcy Cases

The Debtor filed a petition under chapter 13 of the Bankruptcy Code, 11 U.S.C. §§101, *et seq.*, on May 21, 2019.[3]  It is the Debtor's fourth bankruptcy case.  His first chapter 13 case, filed

---

[1] Bankr. Docket No. 31.

[2] Bankr. Docket No. 69.

[3] Bankr. Docket No. 1.

on September 5, 2013, was dismissed roughly one month later, on October 16, 2013, for failure to file required documents.[4]  His second chapter 13 case, filed on August 27, 2014, was dismissed after approximately six months, on February 12, 2015, for failure to appear at the meeting of creditors pursuant to §341 of the Bankruptcy Code and for failure to maintain plan payments.[5]  In the Debtor's second case he sought confirmation of his proposed plan, which was denied.[6]  The Debtor's third chapter 13 case, filed on March 24, 2015, was dismissed after nearly four years, on January 10, 2019, for failure to maintain plan payments.[7]  Unlike in his prior two cases, the Debtor did obtain confirmation of his plan in his third case, on September 28, 2017.[8]

      **B.**     **The Bank's Proof of Claim and Stay Relief Motion**

The Bank issued a home equity line of credit (the "Loan") in the amount of $100,000 to the Debtor and his non-debtor spouse on December 26, 2007, secured by a second mortgage on the Property.  On December 13, 2013, after the dismissal of the Debtor's first bankruptcy case but before initiation of his second case, the Bank filed a mortgage foreclosure action (the "Foreclosure Action") in the Court of Common Pleas for Montgomery County, Pennsylvania.  On May 16, 2014, the Bank obtained a default judgment against the Debtor in the amount of $111,988.40 (the "Default Judgment").  The Montgomery County Sheriff's sale of the Property (the "Sheriff's Sale") was to occur on August 27, 2014, but the Debtor filed his second bankruptcy case on the same day.  The Sheriff's Sale was continued upon the Bank's motions in the Foreclosure Action, and although the Debtor's second bankruptcy case was subsequently dismissed on February 12, 2015, the Sheriff's Sale did not occur prior to the Debtor filing his

---

[4] Case No. 13-17716, Bankr. Docket No. 10.
[5] Case No. 14-16847, Bankr. Docket No. 44.
[6] Case No. 14-16847, Bankr. Docket No. 41.
[7] Case No. 15-11988, Bankr. Docket No. 166.
[8] Case No. 15-11988, Bankr. Docket No. 140.

2

third bankruptcy case on March 24, 2015. Upon the Bank's motions in the Foreclosure Action, the Sheriff's Sale was again repeatedly continued throughout the pendency of the Debtor's third bankruptcy case until its dismissal on January 10, 2019.

In the instant case, the Bank filed a Proof of Claim on July 29, 2019 (the "Claim"),[9] asserting a secured claim of $194, 337.89. The Claim asserts that the amount necessary to cure the default as of the Petition Date was $126,922.27, consisting of $24,778.50 in principal and interest, $2,183.52 in late fees, $725.00 in escrow advances, and $99,235.25 in attorneys' fees and costs. Attached as exhibits to the Claim are an account activity statement for the Loan reflecting payments made and fees assessed, as well as a billing ledger (the "Billing Ledger") from the Bank's counsel for legal fees from April 3, 2015 to May 6, 2019, totaling $75,588.00, with handwritten notations that the total amount reflected did not include $19,822.00 in attorney fees due "prior to Lien Report" or $3,825.25 in total prepetition costs.

On August 26, 2019, the Bank filed the Stay Relief Motion. The Bank asserted that the Debtor had not made post-petition payments due in June, July, and August 2019. The Bank argued that the Debtor's "serial pre- and post-petition defaults and multiple abuses of the United States Bankruptcy Code" warranted granting relief from the automatic stay to permit the Bank to exercise its state law rights with respect to the Property.[10] The Bank further argued that the Debtor's failure to make post-petition payments on the Loan resulted in a lack of adequate protection of the Bank's interest in the Property.[11] The Bank also argued that the Debtor's non-payment in the present case as well as his prior bankruptcy cases constituted a scheme to "delay, hinder, or defraud the Bank" warranting relief from stay pursuant to §362(d)(4) of the

---

[9] Proof of Claim No. 6.

[10] Stay Relief Motion, at ¶18.

[11] *Id.* at ¶¶20 to 21. Although the Stay Relief Motion did not so state, the Bank subsequently confirmed at the Hearing that it was moving for relief pursuant to §362(d)(1). Hearing Audio Transcript, at 2:04 p.m.

3

Bankruptcy Code, as well as an order that the stay relief granted to the Bank would be binding in any subsequent case filed by the Debtor for a two year period.

After the Debtor submitted a general denial of the allegations in the stay relief motion,[12] the Parties submitted memoranda of law in support of their positions on December 3, 2019.  The Bank's memorandum focused almost exclusively on its argument that the Debtor's prior bankruptcy cases and default on his post-petition payments in this case warrants stay relief that would be binding in any subsequent case filed by the Debtor for two years, pursuant to §362(d)(4).[13]  The Debtor's memorandum argued that stay relief is not warranted because the Debtor's proposed plan seeks to cure the pre-petition arrears under the Loan and pay the Bank directly with respect to post-petition payments.[14]  The Debtor also asserted that the proposed plan adequately protects the Bank's interest and that he was making timely post-petition payments.

    C.    **The Claim Objection**

On September 5, 2019, the Debtor filed the Claim Objection.  In the Claim Objection, the Debtor objected to the Bank's Claim on the following grounds: (i) the Bank failed to provide sufficient documentation for the fees and costs asserted; (ii) the fees and costs asserted were not actual and are unreasonable; (iii) the Bank is improperly attempting to collect post-judgment

---

[12] Bankr. Docket No. 45.

[13] Bankr. Docket No. 61.

[14] Bankr. Docket No. 64.  The Debtor also argued that stay relief was not warranted under §362(d)(2) because the Debtor has equity in the Property, which the Debtor valued at $481,160.00, and the Property is necessary for an effective reorganization because it is the Debtor's residence.  As noted above, however, the Bank moved for relief from stay pursuant to §362(d)(1), based on lack of adequate protection, not §362(d)(2).

4

charges; and (iv) the Debtor's proposed plan sets forth a reasonable schedule and time period for payment of the Loan, providing the Bank adequate protection.[15]

On January 13, 2020, the Bank submitted its memorandum of law in opposition to the Claim Objection.[16] The Bank first argued that the documentation attached to the Claim was sufficient evidence of the transactional history for the Loan, reflecting the payment arrearages, late fees, and escrow advances. The Bank also argued that the Billing Ledger from its counsel outlined the monthly invoices issued to the Bank and offered to provide counsel's billing invoices to the Court for *in camera* review (the "Invoices"). The Bank argued that its claim is not limited to the amount of the Default Judgment, but rather is subject to amendment under Pennsylvania law up until the time of the Sheriff's Sale. The Bank cited the complaint in the Foreclosure Action, which sought attorneys' fees based on a fixed percentage rate of 8% of the unpaid principal and interest but noted that such amount was only applicable in the event of purchase by the Bank or a third party at an execution sale. By contrast, if the Debtor were to "reinstate the account" prior to sale, the Bank would be entitled to attorneys' fees based on actual services rendered. The Bank also cited the provision of the mortgage securing the Loan, arguing that it evinced the Parties' intent to allow the mortgage to govern the Parties' obligations following the entry of judgment, including the Bank's collection of all costs of enforcing its rights, including attorneys' fees, without temporal limitation. Finally, the Bank argued that its foreclosure fees, including attorneys' fees, are reasonable in light of the amount of legal work that has been required during the Debtor's bankruptcies and the Foreclosure Action over a seven-year period.

---

[15] Claim Objection at ¶¶1 to 4.

[16] Bankr. Docket No. 69.

On January 28, 2020, the Debtor submitted his memorandum of law in support of the Claim Objection.[17] The Debtor argued that the Billing Ledger provided no explanation of what legal services were provided, and that the legal fees and costs of $99,235.25, the bulk of which the Debtor presumed were generated from repetitive and unnecessary motions to continue the Sheriff's Sale, are excessive when viewed in comparison to the principal in arrears as of the Petition Date of $24,778.50.

D.   **The Hearing on the Contested Matters**

At the February 24, 2020 Hearing on the Contested Matters, the Court advised the Parties that the Claim Objection would significantly impact whether the Court granted the Stay Relief Motion, because whether the Bank's interest in the Property is adequately protected is partially determined by the amount of the Bank's claim. The focus of the Hearing was therefore on the Claim Objection, and specifically the amount of attorneys' fees and costs sought in the Claim. The Parties advised the Court that the attorneys' fees were the sole remaining subject of dispute.

Counsel for the Debtor advised the Court that he had been provided with the Invoices reflecting the attorneys' fees and had objections to them but viewed as a threshold objection the amount of time the Bank's counsel spent on motions to continue the Sheriff's Sale of the Property while the second and third bankruptcy cases were pending, given the existence of the automatic stay during those cases. The Bank's counsel responded that it was prepared to offer the Invoices from October 2013 until May 2019, as well as an itemized cost table, to verify the fees and costs. The Bank therefore proposed that, rather than have a Bank witness go through each of the Invoices one-by-one, that the Invoices be moved into evidence whole-cloth and then reviewed by the Court *in camera* for reasonableness. The Debtor's counsel, however, advised that he wanted the opportunity to elicit testimony regarding the reasonableness of various

---

[17] Bankr. Docket No. 72.

charges, but had not yet identified which time entries in the Invoices he wanted to challenge. The Court therefore took a recess to allow the Parties to determine what Invoices were and were not in dispute.

After the recess the Parties advised the Court that determining which entries the Debtor objected to and which he did not was "taking a little too long to go line-by-line."[18] The Parties therefore proposed that the Debtor outline for the Court his general themes of objection to the Invoices, and then have the Court review the Invoices in light of those themes. The Debtor proceeded to list the following five general objections to the Invoices:

1. First Objection – unnecessary telephone calls or conferences to the Montgomery County court related to filings in the Foreclosure Action.

2. Second Objection – the necessity of the Bank and its counsel conferencing on a weekly basis regarding the Debtor's bankruptcy case.

3. Third Objection – whether the charges related to drafting and preparing two motions for relief the Bank filed were excessive.

4. Fourth Objection – whether there was administrative work reviewing the Debtor's bankruptcy case that could have been performed by a paralegal at a paralegal billing rate; and

5. Fifth Objection – whether the 23 motions to continue[19] the Sheriff's Sale filed in the Foreclosure Action represent excessive and unnecessary attorneys' fees.[20]

---

[18] Hearing Audio Transcript, at 1:49 p.m.

[19] Colloquy between the Court and the Parties later clarified that the number of motions to continue that were filed during the second and third bankruptcy cases was 21, not 23. Hearing Audio Transcript, at 2:01 to 2:02 p.m.

[20] Hearing Audio Transcript, at 1:51 to 1:53 p.m.

The Bank responded to these general themes by arguing that (i) conferences between it and counsel were appropriate, (ii) status conferences did not occur on a weekly basis throughout the seven year period at issue, (iii) the Invoices speak for themselves as to the reasonableness of the time spent on the two motions for relief from stay, (iv) all tasks performed by counsel was appropriate for an attorney to perform, rather than a paralegal or somebody else, and (v) the motions to continue filed in the Foreclosure Action were filed frequently initially to "keep the pressure on" the Debtor to comply with his post-petition obligations, and were subsequently scaled back.[21]

The Court then turned to the Stay Relief Motion. As noted above, the Bank confirmed that it was moving for relief under §362(d)(1), as well as under §362(d)(4). The Bank first argued that with respect to relief under §362(d)(4), the Debtor's history of serial bankruptcy filings, and specifically the second, third, and fourth cases, were intended to hinder and delay the Bank's exercise of its rights. The Bank cited the fact that the Debtor's second case was filed on the day the Sheriff's Sale was scheduled, was promptly dismissed for the Debtor's failure to appear at the §341 meeting, and the Debtor's third case was filed approximately a month and a half later. The third case was also dismissed after four months but was later reopened upon the Debtor's motion. In the third case the Bank moved for relief from stay twice, the second of which was resolved by stipulation. The Bank noted at the Hearing that although the motion for relief was resolved, the Bank was repeatedly required to issue notices of default to the Debtor. Although the Debtor subsequently achieved a confirmed plan in December 2017, the third case was ultimately dismissed in January 2019 due to the Debtor's failure to make plan payments. The Sheriff's Sale was scheduled for late May 2019, but the Debtor filed the instant case on May 21, 2019.

---

[21] Hearing Audio Transcript, at 2:01 p.m.

The Court then turned to the Bank's request for relief from stay under §362(d)(1). The Bank moved into evidence a chart of the Debtor's post-petition payment history in the instant case.[22] That chart reflected that after application of two post-petition payments, the last of which was made three months before the Hearing, the total amount in arrears on the Loan as of the Hearing was $2,868.44, or approximately four months behind. The Bank argued that this arrears, in combination with the Debtor's history of defaults over the prior five years, establishes cause for relief from the stay under §362(d)(1). The Bank also argued that the Debtor's failure to come current on his post-petition obligations in the six months since the Stay Relief Motion had been filed further established cause.

At the conclusion of the Hearing, the Court took the Contested Matters under advisement.

### III.  DISCUSSION

#### A.  The Debtor Failed to Meet His Burden in Objecting to the Claim Other Than the Attorneys' Fees Incurred for the Motions to Continue Sheriff's Sale

Section 502(a) of the Bankruptcy Code provides that a proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. §502(a). The Third Circuit Court of Appeals has held that, where there is an objection, if the proof of claim alleges facts sufficient to support the legal liability asserted, the claim is entitled to *prima facie* validity, and the burden then shifts to the objector to offer evidence sufficient to negate the filed claim's *prima facie* validity. *In re Henry*, 546 B.R. 633, 634 (Bankr. E.D. Pa. 2016) (*citing In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)). The objector must come forward with evidence that, if believed, refutes at least one of the allegations that is essential to the claim's legal sufficiency. *Id.* If the objector meets this burden, the ultimate burden of proof remains with the claimant. *Id.*

---

[22] Exhibit V-2.

9

Although the Claim Objection and the Debtor's memorandum of law in support stated numerous grounds for objection to the Claim that seemingly extend beyond the attorneys' fees sought, the Parties advised the Court at the Hearing that, after discussion, the only remaining subject of dispute was the attorneys' fees. The Debtor, however, chose not to make targeted objections to specific time entries in the Invoices. Rather, the Debtor made the five general themes of objection noted above and left it to the Court to conduct a detailed review of the Invoices to determine what time might fall under which of those themes. This does not satisfy the Debtor's burden to offer evidence sufficient to call into question the *prima facie* validity of the attorneys' fees that might fall under any particular objection. *See generally*, *Bartenwerfer v. Buckley (In re Bartenwerfer)*, 613 B.R. 730, 736 (B.A.P. 9th Cir. 2020) (in the context of evaluating an objection to legal fees awarded to prevailing party in state court litigation, finding that objection failed because the debtors were required to object to specific time entries to obtain a reduction or disallowance of fees, and citing caselaw holding that general arguments that fees claimed are excessive, duplicative, or unrelated do not suffice) (*citing Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal. App. 4th 550, 564 (2008)).

The Debtor's First Objection (unnecessary telephone calls or conferences with the Montgomery County court), Second Objection (unnecessary status conferences between the Bank and its counsel, and Fourth Objection (work unnecessarily performed by an attorney rather than a paralegal) each demanded that the Debtor identify the specific time entries that he believes are problematic in light of the themes articulated at the Hearing. It is the objector's burden, not the Court's, to comb through the Invoices, which span approximately six years, to determine which calls, conferences, meetings, and tasks may or may not be the proper subject of objection.

The Court will therefore overrule the Debtor's First, Second, and Fourth objections to the attorneys' fees in the Claim.

Likewise, the Debtor's Third Objection (whether fees incurred in drafting and preparing two motions for relief were excessive) required the Debtor to do more than make a general themed objection. First, the Bank filed one motion for relief in the Debtor's second case and two motions for relief in the Debtor's third case. There are therefore three possible motions for relief at issue, but the Debtor did not identify at the Hearing to which of the two his objection relates. More importantly, however, to determine whether the attorneys' fees related to the Bank's motions for relief are excessive, the Court would need to understand the posture of the case or cases when the motions were prepared and filed. Not only can the Court not do this without knowing which motions for relief are the subject of the Debtor's objection, but it is not the Court's burden to make an argument for the Debtor as to why, given the posture of the case and content of the motions, the charges were unnecessary or excessive. The Court will therefore also overrule the Debtor's Third Objection to the attorneys' fees in the Claim.

The Court, however, views the Debtor's Fifth Objection to the attorneys' fees in a different light. The Debtor's specific objection was that the 21 motions to continue the Sheriff's Sale of the Property filed during the pendency of the Debtor's second and third bankruptcy cases were unnecessary given the existence of the automatic stay. Although the Debtor did not identify the specific time entries that reflected work related to the various motions to continue, the Court viewed it as possible to identify those entries through its own review of the Invoices. Given the Court's concern, as it expressed at the Hearing, with the number of motions to continue that were filed and the Bank's stated justification for doing so in order to "keep the pressure on" the Debtor, the Court has undertaken a detailed review of the Invoices to identify

11

the fees associated with the 21 motions to continue the Sheriff's Sale. Based on that review, the Court has identified attorneys' fees totaling $13,635.52 related to two motions to continue the Sheriff's Sale during the Debtor's second bankruptcy case, and 19 motions to continue during the Debtor's third bankruptcy case.[23] The Court agrees with the Debtor that, given the imposition of the automatic stay, the repeated filing of the motions to continue the Sheriff's Sale, rather than allowing the writ to lapse and filing for a new one if necessary, was unnecessary and significantly increased the costs that the Bank ultimately seek to pass on to the Debtor. The Court therefore sustains the Debtor's Fifth Objections, and the Claim shall be reduced by $13,635.52.

### B.  Stay Relief Pursuant to §362(d)(4) Is Not Warranted

The Court will deny the Stay Relief Motion to the extent it seeks relief from stay pursuant to §362(d)(4). The Court does not find that the Debtor's second, third, and fourth bankruptcy cases constitute a scheme to hinder or delay the Bank. Although it is true that the second and fourth cases were filed on the eve of rescheduled Sheriff's Sales of the Property, this in and of itself does not render the cases filed in bad faith, and in fact it is common for bankruptcy petitions to be filed to stay foreclosure proceedings. Furthermore, while the second case was dismissed fairly quickly due to the Debtor's failure to appear at the §341 meeting and make plan payments, he sought confirmation of his proposed plan, which was denied. The Debtor's third case lasted nearly four years, during which the Debtor obtained confirmation of a plan and made payments thereunder until the case was dismissed for failure to maintain those plan payments.

---

[23] Attached as Exhibit A hereto is a spreadsheet itemizing the time the Court has identified as being related to the motions to continue. Because the Bank's counsel "block billed" each day's time without breaking down the time spent on individual tasks, where a time entry included tasks related to a motion to continue as well as unrelated tasks, the Court has approximated the time spent on the motions to continue by apportioning the fees billed to the tasks related to a motion to continue, to arrive at an adjusted fees figure.

Likewise, the instant case has been ongoing for nearly two years, and the Debtor has proposed a plan. The Court finds that, in light of this history and these facts, the Debtor's bankruptcy cases do not constitute a scheme to delay and hinder the Bank.

### C. The Court Will Hold the Stay Relief Motion in Abeyance with Respect to the Relief Sought Pursuant to §362(d)(1)

At the Hearing, the evidence was that the Debtor was approximately four months in arrears post-petition and had not made a payment in three months. The Bank argued that this non-performance, together with the debtor's history of non-performance during his bankruptcy cases, constituted cause under §362(d)(1) of the bankruptcy case for relief from stay. The Debtor's counsel responded that the Debtor was prepared to make payments going forward. However, much has occurred in the world since the Hearing. Most notably, the COVID-19 pandemic has reeked economic and logistical havoc in many different ways, and chapter 13 debtors and their bankruptcy estates have not been immune. The Court therefore does not know whether the Debtor has become current on his post-petition payments to the Bank, and if not, how much in arrears he presently is. The answers to these questions will likely dictate whether the Court finds that cause exists to grant relief from stay, whether conditionally or unconditionally. There is currently a motion to dismiss the Debtor's bankruptcy case scheduled for March 4, 2021 (the "Dismissal Hearing"). The Court therefore will order the Bank to provide an accounting of the Debtor's Loan as of March 1, 2021 at the Dismissal Hearing and provide a copy of same to Debtor's counsel prior to such hearing. Thereafter, the Court will issue a ruling on the Stay Relief Motion's request for relief pursuant to §362(d)(1).

### IV. CONCLUSION

For the reasons set forth above, the Court will (i) overrule the Claim Objection to the extent it objects to any component other than the attorneys' fees sought for preparing and filing

the motions to continue the Sheriff's Sales in the Foreclosure Action; (ii) sustain the Claim Objection to the extent it objects to the Bank's attorneys' fees sought for preparing and filing the motions to continue the Sheriff's Sales in the Foreclosure Action; (iii) reduce the allowed amount of the Claim by $13,635.52, reflecting the attorneys' fees related to the motions to continue the Sheriff's Sales in the Foreclosure Action, resulting in an allowed claim in the amount of $180,702.37; (iv) deny the Stay Relief Motion to the extent it seeks relief pursuant to §362(d)(4) of the Bankruptcy Code; and (v) hold the Stay Relief Motion in abeyance, to the extent it seeks relief pursuant to §362(d)(1) of the Bankruptcy Code.

An Order consistent with this Memorandum will be entered.

Dated: February 10, 2021

*Magdeline D. Coleman*

MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Ronald G. McNeil, Esquire
McNeil Legal Services
1333 Race Street
Philadelphia, PA 19107-1585

Joseph L. Haines, Esquire
38 North Sixth Street
P.O. Box 8536
Reading, PA 19603-8536

William C. Miller, Esquire
Chapter 13 Trustee
P.O. Box 1229
Philadelphia, PA 19105

United States Trustee
Custom House
200 Chestnut Street, Suite 502
Philadelphia, PA 19106-2912

# Exhibit A

In re Peta, Case No. 19-13264
Memorandum Opinion Ex. A

| Debtor's Bankruptcy Case | Motion to Continue Number | Date of Related Work | Billed Amount | Tasks Related to Motion v. Total Tasks in Time Entry | Adjusted Fee Amount |
|---|---|---|---|---|---|
| 2 | 1 | 10/15/2014 | $66.00 | 1/1 | $66.00 |
| 2 | 1 | 10/20/2014 | $66.00 | 3/3 | $66.00 |
| 2 | 1 | 10/21/2014 | $154.00 | 2/2 | $154.00 |
| 2 | 1 | 10/22/2014 | $242.00 | 2/5 | $96.80 |
| 2 | 1 | 10/23/2014 | $242.00 | 4/4 | $242.00 |
| 2 | 1 | 10/24/2014 | $66.00 | 2/2 | $66.00 |
| 2 | 1 | 10/27/2014 | $110.00 | 2/2 | $110.00 |
| 2 | 1 | 10/28/2014 | $132.00 | 5/5 | $132.00 |
| 2 | 2 | 1/15/2015 | $484.00 | 3/5 | $290.40 |
| 2 | 2 | 1/20/2015 | $154.00 | 1/2 | $77.00 |
| 2 | 2 | 1/21/2015 | $198.00 | 1/2 | $99.00 |
| 2 | 2 | 1/23/2015 | $110.00 | 4/4 | $110.00 |
| 2 | 2 | 1/25/2015 | $88.00 | 2/2 | $88.00 |
| 2 | 2 | 1/26/2015 | $88.00 | 3/3 | $88.00 |
| 3 | 1 | 3/23/2015 | $704.00 | 4/5 | $563.20 |
| 3 | 1 | 3/24/2015 | $242.00 | 1/3 | $161.33 |
| 3 | 2 | 4/22/2015 | $308.00 | 1/4 | $77.00 |
| 3 | 2 | 4/23/2015 | $198.00 | 2/2 | $198.00 |
| 3 | 2 | 4/28/2015 | $176.00 | 4/4 | $176.00 |
| 3 | 3 | 6/14/2015 | $176.00 | 1/4 | $44.00 |
| 3 | 3 | 6/19/2015 | $88.00 | 2/2 | $88.00 |
| 3 | 3 | 6/23/2015 | $176.00 | 4/4 | $176.00 |
| 3 | 4 | 7/22/2015 | $704.00 | 2/4 | $352.00 |
| 3 | 4 | 7/23/2015 | $154.00 | 2/2 | $154.00 |
| 3 | 4 | 7/27/2015 | $176.00 | 1/2 | $88.00 |
| 3 | 4 | 7/28/2015 | $264.00 | 3/3 | $264.00 |
| 3 | 4 | 8/8/2015 | $66.00 | 2/2 | $66.00 |
| 3 | 5 | 8/22/2015 | $264.00 | 2/3 | $176.00 |
| 3 | 5 | 8/24/2015 | $374.00 | 1/5 | $74.80 |
| 3 | 5 | 8/25/2015 | $242.00 | 2/4 | $121.00 |

In re Peta, Case No. 19-13264
Memorandum Opinion Ex. A

| Debtor's Bankruptcy Case | Motion to Continue Number | Date of Related Work | Billed Amount | Tasks Related to Motion v. Total Tasks in Time Entry | Adjusted Fee Amount |
|---|---|---|---|---|---|
| 3 | 5 | 8/26/2015 | $88.00 | 1/2 | $44.00 |
| 3 | 6 | 10/18/2015 | $242.00 | 1/4 | $60.50 |
| 3 | 6 | 10/20/2015 | $242.00 | 2/3 | $161.33 |
| 3 | 6 | 10/21/2015 | $110.00 | 2/2 | $110.00 |
| 3 | 6 | 10/22/2015 | $264.00 | 1/5 | $52.80 |
| 3 | 6 | 10/23/2015 | $176.00 | 1/2 | $88.00 |
| 3 | 7 | 1/12/2016 | $154.00 | 3/3 | $154.00 |
| 3 | 7 | 1/13/2016 | $154.00 | 2/2 | $154.00 |
| 3 | 7 | 1/14/2016 | $44.00 | 1/1 | $44.00 |
| 3 | 7 | 1/14/2016 | $44.00 | 1/1 | $44.00 |
| 3 | 7 | 1/25/2016 | $132.00 | 3/3 | $132.00 |
| 3 | 7 | 1/26/2016 | $154.00 | 1/1 | $154.00 |
| 3 | 7 | 1/27/2016 | $110.00 | 2/2 | $110.00 |
| 3 | 8 | 4/9/2016 | $198.00 | 3/3 | $198.00 |
| 3 | 8 | 4/15/2016 | $66.00 | 1/2 | $33.00 |
| 3 | 9 | 6/21/2016 | $462.00 | 2/5 | $184.80 |
| 3 | 9 | 6/22/2016 | $176.00 | 1/2 | $88.00 |
| 3 | 9 | 6/22/2016 | $44.00 | 2/2 | $44.00 |
| 3 | 9 | 6/27/2016 | $154.00 | 2/3 | $102.66 |
| 3 | 9 | 7/10/2016 | $198.00 | 1/3 | $66.00 |
| 3 | 10 | 7/20/2016 | $528.00 | 4/7 | $301.71 |
| 3 | 10 | 7/22/2016 | $308.00 | 1/3 | $102.66 |
| 3 | 10 | 7/25/2016 | $154.00 | 1/3 | $51.33 |
| 3 | 10 | 7/26/2016 | $242.00 | 2/5 | $96.80 |
| 3 | 11 | 8/16/2016 | $286.00 | 4/4 | $286.00 |
| 3 | 11 | 8/18/2016 | $44.00 | 1/1 | $44.00 |
| 3 | 11 | 8/19/2016 | $66.00 | 1/2 | $33.00 |
| 3 | 11 | 8/22/2016 | $264.00 | 4/6 | $176.00 |
| 3 | 11 | 8/26/2016 | $66.00 | 1/2 | $33.00 |
| 3 | 12 | 9/23/2016 | $330.00 | 5/5 | $330.00 |

In re Peta, Case No. 19-13264
Memorandum Opinion Ex. A

| Debtor's Bankruptcy Case | Motion to Continue Number | Date of Related Work | Billed Amount | Tasks Related to Motion v. Total Tasks in Time Entry | Adjusted Fee Amount |
|---|---|---|---|---|---|
| 3 | 12 | 9/26/2016 | $66.00 | 1/1 | $66.00 |
| 3 | 12 | 9/27/2016 | $132.00 | 3/3 | $132.00 |
| 3 | 12 | 9/28/2016 | $66.00 | 1/1 | $66.00 |
| 3 | 13 | 12/2/2016 | $572.00 | 3/4 | $429.00 |
| 3 | 13 | 12/5/2016 | $154.00 | 3/4 | $115.50 |
| 3 | 13 | 12/6/2016 | $242.00 | 3/4 | $242.00 |
| 3 | 14 | 2/13/2017 | $286.00 | 2/5 | $114.40 |
| 3 | 14 | 2/14/2017 | $638.00 | 2/8 | $159.50 |
| 3 | 14 | 2/16/2017 | $88.00 | 2/2 | $88.00 |
| 3 | 14 | 2/21/2017 | $110.00 | 3/3 | $110.00 |
| 3 | 14 | 2/25/2017 | $88.00 | 1/1 | $88.00 |
| 3 | 15 | 4/24/2017 | $198.00 | 2/2 | $198.00 |
| 3 | 15 | 4/25/2017 | $418.00 | 5/5 | $418.00 |
| 3 | 15 | 4/26/2017 | $110.00 | 1/2 | $55.00 |
| 3 | 16 | 7/18/2017 | $176.00 | 3/4 | $132.00 |
| 3 | 16 | 7/19/2017 | $198.00 | 4/4 | $198.00 |
| 3 | 16 | 7/20/2017 | $154.00 | 2/2 | $198.00 |
| 3 | 17 | 1/27/2017 | $176.00 | 2/2 | $176.00 |
| 3 | 17 | 1/28/2017 | $132.00 | 2/3 | $88.00 |
| 3 | 17 | 1/29/2017 | $264.00 | 4/4 | $264.00 |
| 3 | 17 | 1/30/2017 | $154.00 | 2/2 | $154.00 |
| 3 | 17 | 2/4/2017 | $132.00 | 4/4 | $132.00 |
| 3 | 17 | 2/5/2017 | $66.00 | 1/1 | $66.00 |
| 3 | 18 | 6/8/2017 | $88.00 | 1/1 | $88.00 |
| 3 | 18 | 6/18/2017 | $418.00 | 4/4 | $418.00 |
| 3 | 18 | 6/19/2017 | $88.00 | 1/2 | $44.00 |
| 3 | 18 | 6/20/2017 | $88.00 | 3/3 | $88.00 |
| 3 | 18 | 6/21/2017 | $88.00 | 1/1 | $88.00 |
| 3 | 18 | 6/22/2017 | $198.00 | 3/3 | $198.00 |
| 3 | 19 | 1/21/2018 | $242.00 | 3/3 | $242.00 |

In re Peta, Case No. 19-13264
Memorandum Opinion Ex. A

| Debtor's Bankruptcy Case | Motion to Continue Number | Date of Related Work | Billed Amount | Tasks Related to Motion v. Total Tasks in Time Entry | Adjusted Fee Amount |
|---|---|---|---|---|---|
| 3 | 19 | 1/23/2018 | $198.00 | 3/3 | $198.00 |
| 3 | 19 | 1/24/2018 | $44.00 | 1/1 | $44.00 |
| 3 | 19 | 1/26/2018 | $308.00 | 4/4 | $308.00 |
| 3 | 19 | 1/27/2018 | $110.00 | 1/1 | $110.00 |
| 3 | 19 | 1/28/2018 | $110.00 | 2/2 | $110.00 |
| 3 | 19 | 1/29/2018 | $66.00 | 2/2 | $66.00 |
| | | | Total Fees Related to 21 Motions to Continue | | $13,635.52 |